IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ADRIAN STEWART, # 242275, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. |
| v. | ) | 2:17-cv-200-WHA-JTA |
| | ) | [WO] |
| LEON BOLLING, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Alabama inmate Adrian Stewart's *pro se* petition for writ of
habeas corpus under 28 U.S.C. § 2254.  Doc. 1.[1]

## I.   BACKGROUND

In September 2011, a Montgomery County grand jury returned a four-count
indictment charging Stewart with capital murder in violation of § 13A-5-40(a)(13), Ala.
Code 1975 (murder by a defendant convicted of another murder within 20 years; Count
One); capital murder in violation of § 13A-5-40(a)(4), Ala. Code 1975 (murder during a
burglary in the first or second degree; Count Two); assault in the second degree in violation
of § 13A-6-21, Ala. Code 1975 (Count Three); and possession of a pistol after having been
convicted of a crime of violence in violation of § 13A-11-72, Ala. Code 1975 (Count Four).

---

[1] References to "Doc(s)." are to the document numbers of the pleadings, motions, and other
materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court.
Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing
system, which may not correspond to pagination on the "hard copy" of the document presented for
filing.

Doc. 7-1 at 6–10.  The charges arose from a home-invasion robbery by Stewart that ended with Stewart's murder of Cornelius Thomas.  *See* Doc. 7-22 at 3.  The State's evidence showed that on June 24, 2009, Thomas was speaking on the telephone with his father, James Hawthorne, when Stewart forced his way into Hawthorne's house and physically subdued Hawthorne.  *Id.*  Evidence indicated that Stewart forcibly entered Hawthorne's residence believing Hawthorne had a stolen safe that contained a large sum of money.  *Id.*  Thomas, who lived near his father, heard the altercation over the phone and raced to Hawthorne's house.  *Id.*  When Thomas entered the house, Stewart shot Thomas in the abdomen and fled.  *Id.*  Thomas later died from the gunshot wound.  *Id.*  Evidence was admitted that Stewart had been convicted of felony murder in 2005.  *Id.*

On December 17, 2012, the jury found Stewart guilty of all counts in the indictment. Doc. 7-15 at 96–97.  On January 16, 2013, the trial court sentenced Stewart to life in prison without parole on the capital-murder convictions[2] and to life in prison with the possibility of parole on the assault and firearm-possession convictions.  Doc. 7-22 at 3.

Stewart appealed, arguing that (1) the trial court erred in admitting evidence of his prior murder conviction and (2) the State's identification evidence should have been excluded because it resulted from an unduly suggestive photographic array.  Doc. 7-20.

On November 14, 2014, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming Stewart's convictions and sentence.  Doc. 7-22.  Stewart applied for rehearing, which the Alabama Court of Criminal Appeals overruled on

---

[2] The jury recommended that Stewart be sentenced to life in prison without parole on the capital-murder convictions and the trial court accepted the recommendation.  *See* Doc. 7-22 at 2–3.

February 6, 2015.  Docs. 7-23, 7-24.  Stewart filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on March 15, 2015.  Docs. 7-25, 7-26. A certificate of judgment was issued on that date.  *See* Doc. 7-26.

On November 12, 2015, Stewart filed a *pro se* petition in the trial court seeking relief under Rule 32 of the Alabama Rules of Criminal Procedure.  Doc. 7-27 at 8–49. Stewart's Rule 32 petition asserted the following claims:

1. The trial court lacked jurisdiction to render judgment or impose sentence on Count Two of the indictment because the language of that count did not charge the offense of capital murder under § 13A-5-40(a)(4), Ala. Code 1975.

2. The trial counsel was ineffective for failing to move to dismiss Count Two as insufficient to charge capital murder under § 13A-5-40(a)(4).

3. The trial counsel was ineffective for failing to object to the trial court's constructive amendment of the indictment during its instructions to the jury on Count Two.

4. The trial counsel was ineffective for failing to request funds for an expert witness to testify regarding the effects of the James Hawthorne's glaucoma and memory loss.

5. The appellate counsel was ineffective for failing to argue on appeal that the trial court violated Stewart's right to a public trial.

Doc. 7-27 at 16–36.

The State filed a response and motion for summary disposition (Doc. 7-27 at 52–61), and on January 14, 2016, the trial court entered an order granting the State's motion for summary disposition and denying Stewart's Rule 32 petition (*id*. at 62–64).

Stewart appealed, reasserting the claims in his Rule 32 petition.  *See* Doc. 7-28.  On September 2, 2016, the Alabama Court of Criminal Appeals issued a memorandum opinion

affirming the trial court's judgment denying the Rule 32 petition. Doc. 7-30. Stewart applied for rehearing which was overruled. Docs. 7-31, 7-32. He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on December 9, 2016. Docs. 7-33, 7-34.

On March 29, 2017, Stewart initiated this habeas action by filing this § 2254 petition.[3] Doc. 1. Stewart's § 2254 petition asserts the following claims:

1. The trial court lacked jurisdiction to render judgment or impose sentence on Count Two of the indictment because the language of that count did not charge the offense of capital murder under § 13A-5-40(a)(4), Ala. Code 1975.

2. Trial counsel was ineffective for failing to move to dismiss Count Two as insufficient to charge capital murder under § 13A-5-40(a)(4).

3. Trial counsel was ineffective for failing to object to the trial court's constructive amendment of the indictment during its instructions to the jury on Count Two.

4. Trial counsel was ineffective for failing to request funds for an expert witness to testify regarding the effects of James Hawthorne's glaucoma and memory loss.

5. Appellate counsel was ineffective for failing to argue on appeal that the trial court violated Stewart's right to a public trial.

6. Trial counsel was ineffective for failing to preserve for appellate review the claim that the trial court violated Stewart's right to a public trial.

7. Trial counsel was ineffective for failing to move to dismiss Count One of the indictment (charging murder by a defendant convicted of another

---

[3] Although the petition was date-stamped as received in this court on April 6, 2017, Stewart represents that he delivered the petition to prison officials for mailing on March 29, 2017. *See* Doc. 2 at 34. Under the prison mailbox rule, a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 271–72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999).

murder within 20 years) on grounds that § 13A-5-40(a)(13), Ala. Code
1975, is unconstitutional as applied to Stewart.

*See* Docs. 1, 2.  On May 18, 2017, Stewart filed an amendment to his § 2254 petition

asserting a claim that admission of the State's in-court identification evidence violated his

right to due process because it resulted from an unduly suggestive photographic array.

Doc. 10.  Respondents have filed an answer and supplemental answer addressing Stewart's

petition and his amended claim.  Docs. 7, 12.

After careful review of the § 2254 petition, the parties' submissions, and the record,

the undersigned finds that Stewart's petition should be denied without an evidentiary

hearing and this case dismissed with prejudice.  *See* Rule 8(a), *Rules Governing Section*

*2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   AEDPA's Standard of Review for Clams Adjudicated on Merits

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Congress significantly limited the circumstances under which a habeas

petitioner may obtain relief."  *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. 2010).

The AEDPA modified the federal courts' role in reviewing state prisoner habeas

applications to prevent "federal habeas 'retrials'" and to ensure that state court convictions

are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

For claims adjudicated on the merits by the state courts and properly before the federal

court, a writ of habeas corpus shall be granted only if the state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court regarding Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).

The Supreme Court has reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the "unreasonable determination of the facts" prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 135 S.Ct. 2269, 2277 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (quotation marks and citations omitted). Factual-issue determinations made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1. *Trial Court's Jurisdiction on Capital-Murder Charge in Count Two*

Stewart contends that the trial court lacked jurisdiction to render judgment or impose sentence on Count Two of the indictment because the language of that count did not charge the offense of capital murder under § 13A-5-40(a)(4), Ala. Code 1975. *See* Doc. 2 at 7–9.

Section 13A-5-40(a)(4), Ala. Code 1975, makes it a capital offense to commit murder during a burglary in the first or second degree.  Count Two of Stewart's indictment provided:

> Count II: The Grand Jury of Montgomery County charge that, before the finding of this indictment,
>
> Adrian Stewart, alias
> Adrian Lamont Stewart, alias
> Stewart A L, alias
> Stewart Lament, alias
>
> Whose name is otherwise unknown to the Grand Jury, did intentionally cause the death of Cornelius Thomas, by shooting him with a gun, and he caused said death during the time that he knowingly and unlawfully entered, or attempted to enter the lawfully occupied dwelling-house of another, to wit: James Hawthorne, with the intent to commit a crime therein, to-wit: robbery and/or assault and/or another crime otherwise unknown to the Grand Jury, in violation of section 13A-5-40(a)(4) of the Code of Alabama, against the peace and dignity of the State of Alabama.

Doc. 7-1 at 9 (emphasis added).  According to Stewart, the language of Count Two charged him with committing murder during a burglary in the third degree, which is not defined as a capital offense under Alabama law.  Doc. 2 at 7–9 .

Stewart presented this claim in his Alabama Rule 32 petition and then pursued it in his appeal from the trial court's denial of that petition.  Addressing the issue in Stewart's Rule 32 appeal, the Alabama Court of Criminal Appeals stated:

> Section 13A-5-40(a)(4), Ala. Code 1975, states that: "Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant" is a capital offense.  As will be discussed below, the indictment contained all of the elements necessary to charge that the victim was intentionally killed during either a first-degree burglary, or a second-degree burglary.

Stewart essentially pleaded that the indictment charged only a murder during a third-degree burglary.  However, it appears he misapprehended the difference between the commission of third-degree burglary, which occurs when a person knowingly enters or remains unlawfully in a <u>building</u> with intent to commit a crime therein, and the commission of first-degree burglary or second-degree burglary, which occurs when a person unlawfully enters a <u>lawfully occupied dwelling-house</u> with intent to commit a theft or a felony therein,

Therefore, Stewart did not state a meritorious claim, and the circuit court properly dismissed the claim.

Doc. 7-30 at 9–10 (emphasis in original).

The relevant portions of Alabama's burglary statute provide that "[a] person commits the crime of <u>burglary in the first degree</u> if he or she knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, the person or another participant in the crime . . . [i]n effecting entry, is armed with a deadly weapon or dangerous instrument or, while in the dwelling or immediate flight from the dwelling, uses or threatens the immediate use of a deadly weapon or dangerous instrument against another person," *see* § 13A-7-5(a)(3), Ala. Code 1975; and "a person commits the crime of <u>burglary in the second degree</u> if he or she unlawfully enters a lawfully occupied dwelling-house with intent to commit a theft or a felony therein," *see* § 13A-7-6(b), Ala. Code 1975. (Emphasis added.)  Thus, Count Two of Stewart's indictment set forth all the elements necessary to charge Stewart with committing a burglary in the first or second degree, during

which he intentionally caused the death of the victim.[4]  Consequently, the state courts correctly rejected Stewart's claim that the trial court lacked jurisdiction on Count Two because that count did not charge the offense of capital murder under § 13A-5-40(a)(4).

Stewart fails to show that the Alabama court's determination that Count Two properly charged capital murder under § 13A-5-40(a)(4) was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court."  *See Dunn v. Madison*, 138 S. Ct. 9, 11 (2017).  Stewart is therefore not entitled to federal habeas relief on this claim.

### 2.  *Unduly Suggestive Photographic Array*

In the amendment to his § 2254 petition, Stewart argues that the admission of the State's in-court identification evidence violated his right to due process because it resulted from an unduly suggestive photographic array.  Doc. 10.

A petitioner who contends that an in-court identification violated his right to due process must demonstrate that a prior, unduly suggestive procedure tainted that identification.  *See Neil v. Biggers*, 409 U.S. 188, 199–200, (1972).  If the petitioner meets this burden, the reviewing court must then decide whether the in-court identification remained sufficiently reliable, under the totality of the circumstances, to avoid potential misidentification.  *Id.*; *see also Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003).

---

[4] As noted below (see Part II.A.3.b of this Recommendation), the trial court's jury instructions on Count Two charged the jury on the elements of murder during a burglary in the first degree.  *See* Doc. 7-15 at 78.

Stewart raised his in-court-identification claim in the trial court in a motion to suppress, which the trial court denied. He pursued the claim on direct appeal. Before addressing the claim, the Alabama Court of Criminal Appeals summarized the evidence regarding the pretrial identification of Stewart in a photographic array used by the Montgomery Police Department:

> [James] Hawthorne was initially unable to identify Stewart, and Stewart escaped from Hawthorne's residence before he could be apprehended by police. Several months after Stewart's forced entry into Hawthorne's house, Hawthorne saw Stewart in a convenience store. Hawthorne confronted Stewart, at which point Stewart fled the convenience store. Hawthorne notified Detective [Michael] Myrick about seeing Stewart, and Detective Myrick obtained still photographs of Stewart from the convenience store's surveillance footage. Detective Myrick circulated the still photographs to various media outlets. Approximately a year passed before Ebone Carter, a cousin of Stewart, identified Stewart as the person in the still photographs. Detective Myrick was then able to create a six-image photographic array. The photographic array was presented to multiple individuals who were able to use the array to identify Stewart.

Doc. 7-22 at 4. The individuals who identified Stewart from the photographic array included Hawthorne, Jasmine Williams, and Quatisha Mays. Stewart argues (as he did on direct appeal) that the photographic array was unduly suggestive because his photograph was the "only suspect with a square-shaped head."[5] Doc. 10 at 10.

---

[5] As sub-arguments relating to his claim that the photographic array was unduly suggestive, Stewart makes several assertions about the supposed unreliability of identifications made by State's witness Ebone Carter. *See* Doc. 10 at 10. The court considers these sub-arguments to be part of Stewart's general claim regarding the alleged suggestiveness of the photographic array. If these sub-arguments about Carter are deemed to raise separate grounds for relief, they are procedurally defaulted, as they were not presented to and exhausted in the state courts and it is too late for Stewart to return to state court to exhaust them. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Stewart asserts no grounds as cause to excuse the procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Thus, the claims, if deemed to be separate from the

In its memorandum opinion, the Alabama Court of Criminal Appeals addressed the

standard for assessing the constitutionality of identification procedures:

> 'In determining the constitutional adequacy of pretrial
> identification procedures and the admissibility of identification
> testimony, the central question is whether, under the totality of
> the circumstances, the identification was reliable. *Manson [v.
> Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140
> (1977)]. This determination involves the application of a <u>two-
> pronged test</u>.
>
>> "[T]he required inquiry is two-pronged.
>> <u>The first question is whether the initial
>> identification procedure was "unnecessarily" . . .
>> or "impermissibly" . . . suggestive</u>. If it is found
>> to have been so, the court must then proceed to
>> the question whether the procedure found to have
>> been 'unnecessarily' or 'impermissibly'
>> suggestive was so "conducive to irreparable
>> mistaken identification" . . . or had such a
>> tendency 'to give rise to a very substantial
>> likelihood of irreparable misidentification' . . .
>> that allowing the witness to make an in-court
>> identification would be a denial of due process."
>> *United States ex rel. Phipps v. Follette*, 428 F.2d
>> 912, 914–15 (2d Cir. 1970).'

*Brazell v. State*, 369 So. 2d at 28–29 (emphasis added). *See also Donahoo
v. State*, 371 So. 2d 68, 72 (Ala. Crim. App. 1979). In evaluating the
likelihood of misidentification, the court must consider the following factors:

> '[1] the opportunity of the witness to view the criminal at the
> time of the crime, [2] the witness's degree of attention, [3] the
> accuracy of the witness's prior description of the criminal, [4]
> the level of certainty demonstrated by the witness at the
> confrontation, and [5] the length of time between the crime and
> the confrontation.'

---

general claim regarding the suggestiveness of the photographic array, is procedurally barred from
review in this action.

> "*Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L.
> Ed. 2d 401, 411 (1972) (emphasis added).  *See also Ex parte
> Frazier*, [729 So. 2d 253 (Ala 1998)].".

*Ex parte Appleton*, 828 So. 2d 894, 900 (Ala. 2001)

Doc. 7-22 at 4–6.

Turning to Stewart's specific argument, the Alabama Court of Criminal Appeals

found:

> Stewart's argument—merely asserting that the photographic array
> was unduly suggestive because the image of Stewart was the only image of
> someone with a square-shaped head—is insufficient to establish that the
> photographic array was impermissibly suggestive.  Further, Detective
> Myrick testified that the photographic array was composed of driver's license
> photographs of individuals who shared Stewart's approximate height,
> weight, age and complexion.  This Court has reviewed the photographic array
> and determined that the collection was "composed of photographs of similar
> quality, size, detail and clarity.  All persons depicted were of the same race.
> No outstanding or peculiar features of [Stewart were] highlighted."  *Shelton
> v. State*, 384 So. 2d 869, 870–71 (Ala. Crim App. 1980); (C. 737–38.).

> Thus, the photographic array was not unduly suggestive.  Because
> Stewart has failed to show that the initial identification procedure was
> unnecessarily or impermissibly suggestive, it is not necessary for this Court
> to address the second-prong—whether there is a likelihood of irreparable
> identification.  As such, this issue does not entitle Stewart to any relief.

Doc. 7-22 at 6.

This court's own review of the photographic array (*see* Doc. 7-7 at 6–7) reveals that

the photographic array was accurately characterized by the Alabama Court of Criminal

Appeals. It was not unduly suggestive.  Because Stewart does not show that the

photographic array was unduly suggestive, this court need not proceed to the second prong

for consideration, i.e., whether the identification procedure gave rise to a substantial

likelihood of irreparable misidentification.  *See Biggers*, 409 U.S. at 199–200.  Stewart

fails to show that the Alabama court's determination that the photographic array was not unduly suggestive was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court." *Dunn*, 138 S. Ct. at 11.  Therefore, he is entitled to no relief on this claim.

### 3.   *Ineffective Assistance of Counsel*

In his § 2254 petition, Stewart asserts several claims of ineffective assistance of counsel litigated in his Alabama Rule 32 proceedings.  A claim of ineffective assistance of counsel is evaluated against the two-part test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandle*r, 218 F.3d at 1314 (internal quotation marks omitted).  Under the prejudice component of *Strickland,* "a reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* is the governing federal law for assessing claims of ineffective assistance of counsel.  A federal court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlo*w,

134 S. Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Florida Dep't of Corr.,* 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*).

### a. <u>Counsel's failure to move to dismiss Count Two</u>

Stewart claims his trial counsel was ineffective for failing to move to dismiss Count Two of the indictment as insufficient to charge capital murder under § 13A-5-40(a)(4), Ala. Code 1975.  Doc. 1 at 6; Doc. 2 at 10–12.

Stewart presented this claim in his Rule 32 petition and pursued it on appeal from the trial court's denial of the petition.  The Alabama Court of Criminal Appeals held the trial court correctly denied relief on this ineffective-assistance claim because it was predicated on the same meritless argument underlying Stewart's substantive claim that the trial court lacked jurisdiction on Count Two:

> Because . . . Stewart's allegation that the indictment did not charge capital murder was not meritorious, trial counsel was not ineffective for failing to file a motion to dismiss it on the ground alleged by Stewart.  Counsel is not ineffective for failing to assert a meritless or baseless claim.

Doc. 7-30 at 10.

As stated above in this Recommendation (Part II.A.1.), there is no merit in Stewart's argument that the trial court lacked jurisdiction on Count Two because that count did not charge capital murder under § 13A-5-40(a)(4).  Because counsel cannot be ineffective for failing to raise a meritless claim, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001), Stewart's  trial counsel was not ineffective for failing to challenge Count Two on the ground asserted by Stewart.

Stewart fails to show that the Alabama court's ruling denying relief on this claim was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court." *Dunn*, 138 S. Ct. at 11. He is entitled to no relief on this claim.

### b.  Counsel's failure to object to constructive amendment of Count Two

Stewart contends that his trial counsel was ineffective for failing to object to what he says was the trial court's constructive amendment of the indictment during its instructions to the jury on Count Two of the indictment.[6] Doc. 1 at 6; Doc. 2 at 17–19. According to Stewart, the language in Count Two charged him only with murder during a burglary in the <u>third degree</u> (Part II.A.2 of this Recommendation, above) while the trial court's jury instructions on Count Two set forth the elements of murder during a burglary in the <u>first degree</u>.  Doc. 2 at 17-19.  Stewart also maintains that Count Two did not allege he was armed with a deadly weapon during the burglary (an element of burglary in the first degree) while the trial court instructed the jury that being armed with a deadly weapon is an element of burglary in the first degree.[7] *Id*.

As discussed above in Part II.A.2 of this Recommendation, Count Two of the indictment set forth all elements necessary to charge Stewart with murder during a burglary

---

[6] Stewart presented this claim in his Rule 32 petition and then pursued it on appeal from the denial of that petition.

[7] This part of Stewart's argument seems inconsistent with his contention that the trial court's jury instructions on Count Two set forth the elements of murder during a burglary in the first degree.

in the first or second degree  For this reason, there is no merit to Stewart's argument that Count Two charged him only with murder during a burglary in the third degree and that this count was constructively amended by the trial court's jury instructions.  There was no basis, then, for Stewart's trial counsel to make such an argument.  *See Chandler*, 240 F.3d at 917 (counsel is not ineffective for failing to raise a meritless claim).

Regarding the remainder of Stewart's argument on this claim—i.e., that Count Two did not allege he was armed with a deadly weapon during the burglary and thus did not set forth the elements of murder during a burglary in the first degree—the Alabama Court of Criminal Appeals stated:

> [T]he indictment alleged that Stewart caused the death of the victim by shooting him with a gun.  A deadly weapon is defined in § 13A-1-2(7), which states:
>
> > (7)  DEADLY WEAPON.  A firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury.  The term includes, but is not limited to, a pistol, rifle, or shotgun; or a switch-blade knife, gravity knife, stiletto, sword, or dagger; or any billy, black-jack, bludgeon, or metal knuckles.
>
> It is axiomatic that a person who shoots another person with a gun is armed with a firearm, which is a deadly weapon.  Therefore, the indictment contained all of the elements of § 13A-7-5(a)(3), Ala. Code 1975, and the trial court properly charged the jury regarding an intentional murder committed during a first-degree burglary.  While the trial court could have charged the jury regarding an intentional murder committed during a second-degree burglary, the trial court's charge was not erroneous.
>
> . . . .
>
> Counsel would not be ineffective for failing to assert a meritless or baseless claim. . . .

> Moreover, Stewart has failed to allege how he was prejudiced by the failure of his trial counsel to object to the charge.  We note that the trial court's charge actually increased the burden of the state by complicating the decision-making process of the jury.  That process would have been lessened if the trial court had charged the jury only on the elements of second-degree burglary.

Doc. 7-30 at 15–17 (emphasis added).

The trial court's jury instructions on Count Two properly charged murder committed during a burglary in the first degree and, by referencing the shooting of Cornelius Thomas with a gun, was sufficient to inform jurors that, to find Stewart guilty, they must find he used a deadly weapon during the burglary to cause Thomas's death. There was no basis for trial counsel to object on the ground urged by Stewart in his petition. Counsel is not ineffective for failing to raise a meritless claim.  *Chandler*, 240 F.3d at 917. Stewart has not shown that the state court's ruling denying relief on this claim was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court."  *Dunn*, 138 S. Ct. at 11.  He is entitled to no relief here.

### c.   Counsel's failure to request funds for expert witness

Stewart says his trial counsel was ineffective for failing to request funds for an expert witness to testify regarding the effects of James Hawthorne's glaucoma and memory loss.  Doc. 1 at 6; Doc. 2 at 13–16.

Stewart presented this claim in his Rule 32 petition and pursued it on appeal from the denial of the petition.  The Alabama Court of Criminal Appeals held the trial court correctly denied relief on this claim, stating:

> Stewart alleged that trial counsel was ineffective for failing to request funds to hire an expert witness, Dr. David J. Knapp, M.D., to testify regarding the effects of [James Hawthorne's] glaucoma.
>
> In this claim, Stewart merely listed some of the medical problems the eyewitness [Hawthorne] had when he was victimized by Stewart, and he faults his trial counsel for failing to call Dr. Knapp as a witness.  He does not state how these problems would have affected the witness's observations during the crime, or his memory of it.  He failed to allege what testimony Dr. Knapp would have given, had he testified.
>
> . . . .
>
> A petitioner must plead sufficient facts for the circuit court to determine the merits of his claim that an expert should have been employed.
>
> . . . .
>
> Because Stewart failed to plead sufficient facts to allow the circuit court to determine whether counsel rendered deficient performance or whether he suffered any prejudice from a failure to call Dr. Knapp, the circuit court properly dismissed this claim.

Doc. 7-30 at 10–13.

Stewart does not show that the Alabama court's ruling denying relief on this claim was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court." *Dunn*, 138 S. Ct. at 11.  Complaints about uncalled witnesses are disfavored. *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008).  "This is especially true because

allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice prong of *Strickland*." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Except for Stewart's assertion of his belief that Dr. Knapp could have provided testimony favorable to his defense, nothing in the record indicates that Dr. Knapp could actually offer an opinion exculpatory of Stewart, or that he would have provided beneficial testimony had he testified. The value of Dr. Knapp to Stewart's defense remains merely speculative. "Such speculation, however, is insufficient to establish prejudice." *Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001) (citing *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what an expert would say is not enough to establish prejudice)). Stewart is entitled to no relief on this claim of ineffective assistance of counsel.

### d.   Appellate counsel's failure to argue public-trial issue on appeal

Stewart contends that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court violated his Sixth Amendment right to a public trial when the court closed the courtroom to all spectators during the testimony of State's witness

Ebone Carter.[8]  Doc. 1 at 6; Doc. 2 at 20–25.  Stewart maintains that the trial court failed to comply with the requirements of *Waller v. Georgia*, 467 U.S. 39 (1984), before closing the courtroom during Carter's testimony.  Doc. 2 at 25.  According to Stewart, the closure was a structural error that could and should have been raised on direct appeal.  *Id.*

The right to a public trial is guaranteed by the Sixth Amendment and incorporated against the States by the Fourteenth Amendment.  *See Waller*, 467 U.S. at 39.  Although the Supreme Court has determined that a defendant's right to public trial is not absolute, there is a "presumption of openness."  *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 505 (1984).  To overcome this presumption and justify closing the courtroom to the public during a criminal proceeding, four elements must be satisfied: (1) the party seeking to close the proceedings must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure.  *Waller*, 467 U.S. at 48.

Stewart presented this claim in his Rule 32 petition and pursued it on appeal from the trial court's denial of the claim.  In affirming the trial court, the Alabama Court of Criminal Appeals stated:

---

[8] Carter, who was related to Stewart as a cousin by marriage, testified that she went to police a year after the offense and reported that she recognized Stewart as the person identified as a suspect in a still photo (taken from a convenience store's video footage) shown on local television.  Doc. 7-13 at 16-18.  Carter stated she did not go to police after seeing the photo several months earlier, although she had recognized Stewart from the start, "[b]ecause that's my cousin."  *Id.* at 18.  Carter also stated that several months after she contacted police to identify Stewart in the photo, she talked to James Hawthorne and told him she reported Stewart to the police and apologized for Stewart's having killed Hawthorne's son.  *Id.* at 23–25.

[In his Rule 32 petition,] Stewart extensively quoted from the transcript from the direct appeal of his trial and included as exhibits 5 and 6 to his petition the relevant pages (pp. 735-38) of the trial transcript, which are quoted below:

. . . .

(Bench conference outside the hearing of the jury as follows:)

MR. MCEWEN [Assistant District Attorney]:   We intend to call Ebone Carter right now to testify.  She is a family member. The defendant has a right to confront his accusers, but the family does not based on the delicate nature of her testimony and the issue with the family, we ask that they because excused for her testimony.

. . . .

MR.  KACHELMAN  [Assistant  District  Attorney]:    Judge, she's intimidated by the family because there's been threats.

THE COURT:  Of whose?

MR. KACHELMAN:  The defendant's family.  We're asking they be excluded, not the defendant, but his family be excluded from the—

THE COURT:  I'll lock everybody out, not just—it's going to be everybody's family.  Everybody.

MR. KACHELMAN:  I'm okay with that too.

THE COURT: All right.  We'll do it.

MR. HOUTS [Stewart's Counsel]:  I object, Your Honor.

THE COURT:  You object but I'm going to do it.  I'm not going to cause problems if I don't have to.  All right.  Y'all go in that room right there.

(The following proceedings occurred outside the presence of the jury:)

THE COURT:  All right. They made a motion to exclude.

MR. KACHELMAN:  To close the courtroom.

THE COURT:  No, to exclude the defendant's family because of threats or something of that effect.  Now, what I'm going— I wouldn't do that.  What I'm going to do is make everybody get out of the courtroom but the parties—

MR. KACHELMAN:  Thank you, Your Honor.

THE COURT:  —while this witness testifies.  So everybody has got to go.

       I can't keep breaking.  Y'all are killing.

MR. HOUTS:  You overruled my objection.  Judge, I think since this is being done at the witness's request, when the jury comes back, they're going to notice.

COURT: They're not going to know why.  Y'all are not to mention anything about what I did for the jury or make some implication it's some dangerous situation.

MR. HOUTS:  That's my point.  They are going to assume the courtroom was cleared for a reason, and the assumption is worse than the reality.  I want the jury to know she is asking today to clear the court.  I want the jury to know that because when the jury then finds out that she is apparently blabbing all over town to Hawthorne about who she is, what there're asking for is inconsistent with who would tell James Hawthorne, hey, I know about your case, and let me tell you about what else I saw I didn't tell the police.  I want the jury to hear her say she's scared for her safety because I can ask if you're so scared why are you blabbing all over town.

THE COURT:  I'm not going to do that.  Denied.  Bring the witness in.  Let's go.

(C. 43–44.)

However, trial counsel made only a general objection, citing no grounds whatsoever.

"An overruled general objection is insufficient to predicate error on appeal unless the evidence objected to is patently inadmissible. *Brown v. State*, 392 So. 2d 1248 (Ala. Crim. App. 1980), cert. denied, 392 So. 2d 1266 (Ala. 1981); *Todd v. State*, 380 So. 2d 370 (Ala. Crim. App. 1980); *Stephens v. State*, 451 So. 2d 402 (Ala. Crim. App. 1984)."

*Hooks v. State*, 534 So. 2d 329, 351 (Ala. Crim. App. 1987). Stewart cites no authority holding that it is unnecessary for counsel to state specific grounds in an objection to the closing of a trial, and we have found none.

. . . .

Therefore, appellate counsel was faced with a record where the trial court's error alleged by Stewart was not preserved and was insufficient to predicate error on appeal.

As noted above, counsel would not be ineffective for failing to assert a meritless or baseless claim.

Doc. 7-30 at 18–22.

Here, the Alabama Court of Criminal Appeals found that Stewart's appellate counsel did not render ineffective assistance of counsel by failing to argue the public-trial issue on direct appeal because Stewart's trial counsel failed to state specific grounds in an objection to closing the trial that was sufficient to preserve the public-trial issue for appellate review. Thus, according to the Court of Criminal Appeals, had Stewart's appellate counsel raised the public-trial claim on direct appeal, it would have been to no avail because the claim was not first raised and litigated in the trial court. Upon review of the record, this court cannot say that the state court's ruling denying Stewart relief on this claim was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an

unreasonable determination of the facts in light of the evidence presented in state court." *Dunn*, 138 S. Ct. at 11.  The record supports the Alabama Court of Criminal Appeals' factual determination that trial counsel did not specifically object to the closure of the courtroom in a manner sufficient to preserve a Sixth Amendment public-trial claim.[9]  It was not professionally unreasonable for appellate counsel to eschew a claim not preserved for appellate review, and because such a claim would not have been subject to review on the merits if raised for the first time on direct appeal, Stewart was not prejudiced by his appellate counsel's failure to raise the claim.

Although in dismissing Stewart's ineffective-assistance-of-appellate-counsel claim, the Alabama Court of Criminal Appeals did not address the merits of whether the trial court's actions in closing the courtroom during Carter's testimony satisfied the Supreme Court's factors in *Waller* for justifying closing the courtroom to the public during a criminal proceeding, this court's review of the record reveals that the trial court's actions complied with the factors in *Waller* and did not violate Stewart's Sixth Amendment right to a public trial.

The first *Waller* factor necessary to overcome the presumption against closing the courtroom during trial is that the party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced.  *Waller*, 467 U.S. at 48.  Here, the State's concern with protecting Carter from intimidation, threats, and potential physical harm was

---

[9] Stewart fails to present clear and convincing evidence to rebut the presumption of correctness given to the state court's determinations of fact.  28 U.S.C. § 2254(d)(2), (e)(1).

a compelling interest of the State, satisfying the first *Waller* factor.  In asking that Stewart's family members be excluded from the courtroom, the prosecutors explained to the trial court that Carter had been threatened and intimidated by the family members and indicated that, by testifying in front of the family members, Carter would be subjected to further intimidation and threats.

The second *Waller* factor—that the closure must be no broader than necessary to protect the interest at stake, 467 U.S. at 48—is also satisfied.  Here, all portions of the trial other than Carter's testimony were public.  Although the trial court closed the courtroom to all spectators, and not just to Stewart's family members, during Carter's testimony, the court indicated it was doing so to avoid prejudicing Stewart in the eyes of the jury, i.e., so that the jury would not see that only Stewart's family members had been removed from the courtroom and draw negative inferences against Stewart based on his family's removal. Because the closure was only during Carter's testimony and the compelling interest for closing the courtroom was the protection of Carter from intimidation, threats, and possible physical harm, the closure to all spectators during her testimony was adequately tailored to serve that interest, given the trial court's wish to avoid having the jury draw negative inferences against Stewart from the removal of only Stewart's family members.

As to the third *Waller* factor*, see* 467 U.S. at 48, it is apparent that the trial court considered reasonable alternatives to closing the trial to spectators during Carter's testimony.  As indicated above, the trial court found that the option of removing only Stewart's family members created the risk of causing jurors to draw negative inferences against Stewart.  Stewart has propounded no alternative to the course taken by the trial

court, apart from allowing everyone to stay in the courtroom.  The alternative to allow everyone to stay in the courtroom without limitation would have been, in effect, no alternative.  Thus, all apparently reasonable alternatives to the closure were considered by the trial court.

Finally, as for making findings to support the closure, *Waller*, 467 U.S. at 48, it is clear from the trial court's statements that the court accepted the prosecutor's representations that Carter had been threatened and intimidated by Stewart's family members and that, by testifying in front of the family members, Carter would be subjected to further intimidation and threats.  It is also clear from the court's statements that its closure of the courtroom to spectators during Carter's testimony was designed to protect Carter from intimidation and threats from Stewart's family members.  Finally, it is clear from the court's statements that it closed the courtroom to all spectators, and not just to Stewart's family members, during Carter's testimony to avoid prejudicing Stewart in the eyes of the jurors who might draw negative inferences against Stewart based on only his family's removal.  Although the trial court did not expressly state that the closure was necessary to facilitate Carter's testimony, its findings are clear in context, and sufficient support for the closure during Carter's testimony can be gleaned from the trial court's statements on the record.

Fair-minded jurists could conclude that the trial court's actions complied with the factors in *Waller* and that the courtroom closure during Carter's testimony did not violate Stewart's Sixth Amendment right to a public trial.  Because Stewart can show no violation of his right to a public trial, his appellate counsel did not render ineffective assistance of

counsel by failing to raise such a claim on direct appeal. Stewart is not entitled to habeas corpus relief on this claim.

## B.   Procedurally Defaulted Claims

### 1.   *Trial Counsel's Failure to Preserve Public-Trial Claim for Appellate Review*

Stewart claims his trial counsel was ineffective for failing to preserve for appellate review the claim that the trial court violated his right to a public trial. Doc. 1 at 6; Doc. 2 at 26. Respondents argue this claim was not presented to the state courts for review and is therefore unexhausted and procedurally defaulted. Doc. 7 at 26–27.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised. *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review—a petition for a writ of certiorari—filed in the Alabama Supreme Court. *See Smith v. Jones*, 256 F.3d 1135, 1140–41 (11th Cir. 2001); Ala. R. App. P. 39 and 40. The exhaustion requirement applies to state post-conviction

proceedings as well as to direct appeals. *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003).

Habeas claims not properly exhausted in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).   "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas." *Coleman*, 501 U.S. at 735 n.1 (citations omitted); *see Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

A habeas petitioner can overcome a procedural default either through showing cause for the default and resulting prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).   Cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488; *United States v. Frady*, 456 U.S. 152, 170 (1982).   Examples of such external impediments include a factual or legal basis for a claim not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel. *Murray,* 477 U.S. at 488.   To establish prejudice, a petitioner must show that the errors worked to his "actual and substantial disadvantage,

infecting his entire [proceeding] with error of constitutional dimensions." *Id.* at 494 (internal quotations and emphasis omitted).

Prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327.

### a.   Stewart's claim is defaulted.

Respondents correctly argue that Stewart's claim that his trial counsel was ineffective for failing to preserve for appellate review the claim that the trial court violated his right to a public trial was not presented to the state courts for review and is therefore unexhausted and procedurally defaulted.  Doc. 7 at 26–27.  Respondents also correctly argue that Stewart may no longer return to the state courts to exhaust this claim, because any attempt to present this claim in an Alabama Rule 32 petition (where a claim of this nature would ordinarily be properly raised) would be time-barred under the one-year limitation period in Ala. R. Crim. P. 32.2(c) and also precluded by the successive-petition bar in  Ala. R. Crim. P. 32.2(b).  Thus, the exhaustion and preclusion rules coalesce into the procedural default of this claim.  *See Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.  Stewart does not attempt to assert any ground as cause excusing his procedural default of this claim. Consequently, the "cause and prejudice" exception does not apply to excuse his procedural default.  Nor does Stewart assert actual innocence as a gateway to review his defaulted claim.  For these reasons, this claim is procedurally barred from federal habeas review.

### b.   <u>Exception under *Martinez v. Ryan*</u>

In *Martinez v. Ryan*, 562 U.S. 1 (2012), the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[10] *Martinez*, 562 U.S. at 17.  In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court extended the holding of *Martinez* to cases where, as a matter of systemic operation, the first opportunity to challenge trial counsel's effectiveness is in state post-conviction proceedings.  *Trevino*, 569 U.S. at 423–29.  To demonstrate cause in circumstances where *Martinez* and *Trevino* apply, a petitioner must establish (1) a substantial claim of ineffective assistance of trial counsel; (2) the cause for failing to exhaust the claim is ineffective post-conviction counsel or no post-conviction counsel in the initial-review collateral proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim regarding trial counsel's performance; and (4) applicable state law requires, either by law or as a practical matter, that ineffective assistance of trial counsel claims be raised in the initial post-conviction proceeding.  *Trevino*, 569 U.S at 423;

---

[10] The Court in *Martinez* created a narrow exception to the rule set forth in *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), that an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default.  The Court limited its ruling to ineffective-assistance-of-trial-counsel claims in initial-review collateral proceedings.  *Martinez*, 562 U.S. at 15–17.  The ruling does not provide a gateway to federal habeas review of attorney errors in other proceedings.  "It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."  *Id.* at 16.

*Martinez*, 562 U.S. at 13–18.  If a petitioner can establish cause under *Martinez*, he still must establish prejudice as a result of the defaulted ineffective-assistance-of-trial-counsel claim, that is, but for the error, there is a reasonable probability that the result of the proceeding would have been different.  *See Martinez*, 562 U.S. at 18 (remanding the questions "whether [Petitioner's] attorney in his first collateral proceeding was ineffective [and] whether his claim of ineffective assistance of trial counsel is substantial.  And the court [of appeals] did not address the question of prejudice."); *see also Trevino*, 569 U.S. at 429 (remanding the questions "whether Trevino's claim of ineffective assistance of trial counsel is substantial [and] whether Trevino's initial state habeas attorney was ineffective").

This court has found that fair-minded jurists could conclude that the trial court's actions in closing the courtroom to spectators during Ebone Carter's testimony complied with the factors set forth in *Waller* and that the courtroom closure during Carter's testimony did not violate Stewart's Sixth Amendment right to a public trial.  Consequently, Stewart demonstrates neither deficient performance by trial counsel nor resulting prejudice regarding this claim.  Therefore, this ineffective-assistance-of-trial-counsel claim lacks merit.  The claim is not a "substantial" claim, and Stewart does not establish cause excusing his default of his claim that his trial counsel rendered ineffective assistance in this regard.

Moreover, alleged Sixth Amendment public-trial errors raised in the context of claims of ineffective assistance of trial counsel require proof of prejudice.  *Purvis v. Crosby,* 451 F.3d 734, 743 (11th Cir. 2006).  In *Purvis*, the Eleventh Circuit stated:

> We cannot hold that attorney error in failing to object to the closing of the courtroom is so likely to result in prejudice that we will presume it, unless we are willing to defy the Supreme Court's specific admonition that when it comes to deciding ineffective assistance claims: "[Attorney errors] cannot be classified according to likelihood of causing prejudice." *Strickland*, 466 U.S. at 693. We cannot dispense with the prejudice requirement for attorney error of this type without defying the Supreme Court's clear holding that except in three limited circumstances, which are not present here, a defendant must show that any error his counsel committed "actually had an adverse effect on the defense." *Id*. That means he must prove a reasonable probability of a different result. *Id.*

451 F. 3d at 740–41.

The Court in *Purvis* held that, even if the defendant's trial counsel had properly objected and persuaded the judge not to partially close the courtroom, "there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. 451 F. 3d at 738. The Court further noted that it did not know which way the decision to partially close the courtroom could have affected the way the victim would have come across to the jury if forced to testify publicly; therefore, it concluded that "we do not know, and when we do not know, the party with the burden loses, and here that party is *Purvis*." *Id*.

The same is true in Stewart's case. Had his trial counsel properly objected and persuaded the trial court not to close the courtroom during Carter's testimony, this court has no reason to believe that would have changed Carter's testimony in a way that would have affected the jury's verdict in Stewart's case. Nor does Stewart show how a change in Carter's testimony was reasonably likely to affect the outcome. Moreover, had trial counsel made a sufficiently specific objection to preserve a Sixth Amendment public-trial claim, and squarely presenting the issue to the trial court, there is as much reason to believe that

33

pointing out the alleged error to the trial court would have caused the court to correct the alleged error or amend its ruling, thereby depriving Stewart of the issue on appeal. *See Purvis*, 451 F. 3d at 738. Stewart's failure to demonstrate prejudice arising from his trial counsel's actions means this claim is not a "substantial" claim. Stewart therefore does not establish cause excusing his default of his claim that his trial counsel rendered ineffective assistance in this regard. He is entitled to no relief here.

### 2.   *Trial Counsel's Failure to Move to Dismiss Count One*

Stewart also claims his trial counsel was ineffective for failing to move to dismiss Count One of the indictment, which charged him with murder by a defendant convicted of another murder within 20 years, on grounds that § 13A-5-40(a)(13), Ala. Code 1975, is unconstitutional as applied to him. Doc. 1 at 6; Doc. 2 at 32–34. According to Stewart, his prior murder conviction charged in Count One was for felony murder, not intentional murder, which he argues is the type of murder required to sustain a charge of capital murder. Doc. 2 at 32–33.

Respondents correctly argue that Stewart's claim that his trial counsel was ineffective for failing to move to dismiss Count One of the indictment was not presented to a state courts and, as such, is unexhausted. Doc. 7 at 28–29. Respondents also correctly argue that Stewart may no longer return to the state courts to exhaust this claim, because any attempt to present this claim in an Alabama Rule 32 petition (where a claim of this nature would ordinarily be properly raised) would be time-barred under the one-year limitation period in Ala. R. Crim. P. 32.2(c) and also precluded by the successive-petition bar in  Ala. R. Crim. P. 32.2(b). *Id.* The exhaustion and preclusion rules coalesce into the

procedural default of this claim.  *See Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.  Stewart does not attempt to assert any ground as cause excusing his procedural default of this claim. Consequently, the "cause and prejudice" exception does not apply to excuse his procedural default.  Nor does Stewart assert actual innocence as a gateway to review his defaulted claim.  For these reasons, this claim is procedurally barred from federal habeas review.

Assuming that the *Martinez v. Ryan* exception applies to warrant consideration of this otherwise defaulted claim of ineffective assistance of trial counsel, Stewart fails to show that this claim is a "substantial" claim.  Section 13A-5-40(a)(13), Ala. Code 1975, defines as a capital offense:

> Murder by a defendant who has been convicted of any other murder in the 20 years preceding the crime;  provided that the murder which constitutes the capital crime shall be murder as defined in subsection (b) of this section;  and provided further that the prior murder conviction referred to shall include murder in any degree as defined at the time and place of the prior conviction.

Subsection (b) of § 13A-5-40(a)(13) provides:

> Except as specifically provided to the contrary in the last part of subdivision (a)(13) of this section, the terms "murder" and "murder by the defendant" as used in this section to define capital offenses mean murder as defined in Section 13A-6-2(a)(1), but not as defined in Section 13A-6-2(a)(2) and (3).  Subject to the provisions of Section 13A-5-41 , murder as defined in Section 13A-6-2(a)(2) and (3), as well as murder as defined in Section 13A-6-2(a)(1), may be a lesser included offense of the capital offenses defined in subsection (a) of this section.

Section 13A-6-2, Ala. Code 1975, provides, in pertinent part:

> (a) A person commits the crime of murder if he or she does any of the following:

(1) With intent to cause the death of another person, he or she causes the death of that person or of another person.

(2) Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.

(3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, aggravated child abuse under Section 26-15-3.1, or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person.

Under the language of the Alabama statute, the murder that must be "intentional murder" for purposes of § 13A-5-40(a)(13) is not the defendant's <u>prior</u> murder conviction but rather the current murder charged as capital.  Section 13A-5-40(b), which is referenced in § 13A-5-40(a)(13), makes clear that the murder that must be intentional (as opposed to reckless or felony murder) is the presently charged murder.  Therefore, even if Stewart's prior murder conviction was for felony murder, it did not render his conviction under Count One invalid and § 13A-5-40(a)(13) is not unconstitutional as applied to him.

Stewart demonstrates neither deficient performance by trial counsel nor resulting prejudice.  The claim is not a "substantial" claim, and Stewart therefore does not establish cause excusing his default of this claim of ineffective assistance of trial counsel.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED without an evidentiary hearing and this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **September 8, 2020**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.   *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 24th day of August, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE